IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

| | |
|---|---|
| ROBERT T. LAGERVALL, <br><br> Plaintiff, <br><br> vs. <br><br> MISSOULA COUNTY PUBLIC SCHOOLS, PRINCIPAL TED FULLER, and JENNIE HAINES, <br><br> Defendants. | CV 16-57-M-DLC-JCL <br><br> ORDER, and FINDINGS AND RECOMMENDATION |

Before the Court is Defendants Missoula County Public Schools, Ted Fuller and Jennie Haines's Fed. R. Civ. P. 56 motion for summary judgment requesting this case be dismissed. Plaintiff Robert Lagervall did not file a response to Defendants' motion. For the reasons discussed, the Court recommends the motion be granted and this action be dismissed.

**I.   Background**

At the time of the events alleged in Lagervall's complaint, his son, P.L., was a student at Sentinel High School in Missoula, Montana. Apparently, P.L. is an individual with disabilities.

Sentinel High School is within the Missoula County Public Schools district.

1

Ted Fuller is the principal at Sentinel, and Virginia Haines is the Special Education Coordinator at Sentinel.

On November 4, 2015, an issue arose as to the Sentinel teachers' treatment and education of P.L., so Lagervall went to Sentinel to visit with school administrators, including Fuller, about the issue. The encounter escalated to some degree of confrontation due to, as Lagervall recognizes, his own disabling condition or conditions. As a result of the confrontation, Fuller decided Lagervall was no longer welcome on the premises as Sentinel. Fuller engaged Sentinel's resource officer, Officer Monaco, to prevent Lagervall from entering the premises, and to inform Lagervall, in writing, that he was not permitted on the premises.

Lagervall commenced this action alleging Defendants violated his rights under the Americans with Disabilities Act ("ADA"). Specifically, he contends Defendants violated regulatory provisions promulgated pursuant to the ADA at 28 C.F.R. § 35.130 (prohibiting discrimination), § 35.134 (prohibiting retaliation or coercion), and § 35.160 (requiring effective communications).

## II.  Applicable Law - Summary Judgment Standards

Federal Rule of Civil Procedure 56(a) entitles a party to summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." In deciding a motion for

summary judgment, the Court views the evidence in the light most favorable to the non-moving party and draws all justifiable inferences in the non-moving party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Betz v. Trainer Wortham & Co., Inc.*, 504 F.3d 1017, 1020-21 (9th Cir. 2007).

The Court notes that Lagervall has not filed any brief in opposition to Defendants' motion for summary judgment, and the time for doing so has passed. Nonetheless, the Ninth Circuit has made clear that a district court may not grant "summary judgment simply because a party fails to file an opposition or violates a local rule," and the court must "analyze the record to determine whether any disputed material fact [is] present." *Ahanchian v. Xenon Pictures, Inc.*, 624 F.3d 1253, 1258 (9th Cir. 2010). *See also Martinez v. Stanford*, 323 F.3d 1178, 1182 (9th Cir. 2003) (explaining that "a nonmoving party's failure to comply with local rules does not excuse the moving party's affirmative duty under Rule 56 to demonstrate its entitlement to judgment as a matter of law").

Finally, because Lagervall is proceeding pro se the Court must construe his documents liberally and give them "the benefit of any doubt" with respect to Defendants' summary judgment motion. *Frost v. Symington*, 197 F.3d 348, 352 (9th Cir. 1999). *See also Erickson v. Pardus* 551 U.S. 89, 94 (2007).

## III. DISCUSSION

While Lagervall's son, P.L., was a student at Sentinel High School, Lagervall engaged in a pattern of recurring conduct in his interactions with Sentinel staff members regarding either P.L.'s education or his conduct at Sentinel. At times, when staff would contact Lagervall by telephone to discuss issues about P.L., Lagervall would become agitated, upset and would terminate the phone conversation. (Doc. 25-1 at 2.) Typically, after a terminated phone call he would arrive at Sentinel "in an escalated, dysregulated state, demanding information, responses to questions, and disrupting school operations." (Doc. 25-1 at 2.)

The record reflects Lagervall engaged in various forms of other conduct at times while on the premises at Sentinel.[1] He would:

---

[1] This description of Lagervall's disruptive conduct is taken from Defendants' Fed. R. Civ. P. 36 requests for admission served upon Lagervall to which Lagervall failed to respond. Rule 36 provides that "[a] matter is admitted unless, within 30 days after being served, the party to whom the request is directed serves on the requesting party a written answer or objection addressed to the matter and signed by the party or its attorney." Fed. R. Civ. P. 36(a)(3). The operation of Rule 36(a)(3) "results in the automatic admission of the matters requested...No motion to establish the admissions is needed because Federal Rule of Civil Procedure 36(a) is self-executing." *Lanier v. San Joaquin Valley Officials Association*, 2016 WL 4764669, *4 (E.D. Cal. 2016) (citations and quotations omitted). Since Lagervall did not respond to, and deny the Rule 36 requests for admission submitted by Defendants, those matters are deemed admitted. And unanswered matters deemed admitted "may be relied on as the basis for granting

4

(1.) raise his voice when speaking with Sentinel employees, and yell at the employees;

(2.) raise his voice when speaking with Sentinel employees at meetings concerning P.L., disrupt those meetings, and walk out on some meetings because he was angry;

(3.) act aggressively towards, and intimidate Sentinel employees; and

(4.) hang up the phone in the middle of telephone conversations with Sentinel employees.

(Doc. 22-7 at 15-16.)

As a result, Sentinel staff members complained to Fuller about Lagervall's "intimidating and disruptive behavior[.]" (Doc. 25-1 at 3.) Staff members had expressed concern for their own safety and welfare, and were anxious about Lagervall arriving at the school in a state of escalated anger. (*Id*.) Fuller himself had personally interacted with Lagervall "in various contexts and on many occasions." (Doc. 25-1 at 2.)

On November 4, 2015, a Sentinel employee telephoned Lagervall to discuss an issue of P.L.'s conduct at school. Lagervall became angry, advised he was on his way to Sentinel, and terminated the phone call. Consequently, Fuller directed School Resource Officer Mark Monaco to meet Lagervall at the door, to prevent Lagervall from entering the building, and to instruct Lagervall to leave the school

---

summary judgment." *Conlon v. United States*, 474 F.3d 616, 621 (9th Cir. 2007).

property. Officer Monaco successfully persuaded Lagervall to leave the school after a "heated exchange" between the two. (Doc. 25-1 at 2-3.)

On November 4, 2015, Fuller prepared and delivered a letter to Lagervall. The letter instructed Lagervall that in the future, if he wanted to come to Sentinel he had to first notify Fuller and obtain permission to come to the school. The letter noted that the required permission was due to Lagervall's prior conduct towards school officials which they perceived to be "aggressive and disruptive[.]" (Doc. 25-2.) Fuller states that with his letter he sought to prevent further disruptions of school operations caused by Lagervall, yet still allow Lagervall to participate in P.L.'s education. And the procedure for Lagervall to obtain permission was further intended to allow Sentinel staff to gather appropriate personnel who were familiar with Lagervall and his behavior to meet with Lagervall at a designated time.

Fuller notes that Lagervall invoked the procedure for obtaining permission outlined in his letter, and Lagervall was granted permission to come to Sentinel several times. Fuller states he is not aware of a time when Lagervall was denied permission to come to Sentinel.

As a result of the foregoing events, Lagervall commenced this action under the ADA. Title II of the Americans with Disabilities Act (ADA) at 42 U.S.C. §

12132 provides as follows:

> Subject to the provisions of this subchapter, no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity.

42 U.S.C. § 12132. A viable claim for relief under section 12132 requires a plaintiff to satisfy four elements as follows:

> (1) [the plaintiff] "is an individual with a disability;" (2) [the plaintiff] "is otherwise qualified to participate in or receive the benefit of some public entity's services, programs, or activities;" (3) [the plaintiff] "was either excluded from participation in or denied the benefits of the public entity's services, programs, or activities, or was otherwise discriminated against by the public entity;" and (4) "such exclusion, denial of benefits, or discrimination was by reason of [the plaintiff's] disability."

*McGary v. City of Portland*, 386 F.3d 1259, 1265 (9th Cir. 2004).

### A. **Individual Defendants**

The individuals named as Defendants in this action – Fuller and Haines – argue Lagervall does not advance any claim against them that is cognizable under the ADA. The Court agrees.

Title II of the ADA governs the actions of a public entity, not an individual. Therefore, the ADA does not impose individual liability against a state official in his or her individual capacity. *Heinke v. County of Tehama Sheriff's Dept.*, 2013 WL 3992407, *7-8 (E.D. Cal. 2013). *See also Vinson v. Thomas*, 288 F.3d 1145,

1156 (9th Cir. 2002) (concluding a plaintiff cannot pursue a claim under 42 U.S.C. § 1983 against an individual state official predicated upon a violation of Title II of the ADA).

Therefore, Defendants Fuller and Haines' summary judgment motion should be granted in this respect. Lagervall's claims against them in their individual capacities should be dismissed.

### B. No ADA Violation

Missoula County Public Schools ("Missoula Schools") asserts the actions it took in response to Lagervall's history of conduct at Sentinel do not constitute violations of his rights under the ADA. Specifically, Missoula Schools argues it did not exclude Lagervall from its activities, programs or services, and it did not discriminate against him. And to the extent any exclusion or discrimination occurred, it was not because of any disability from which Lagervall may suffer.[2]

Undisputedly, Fuller delivered a written letter to Lagervall informing him he was not permitted on the premises at Sentinel unless Lagervall first obtained Fuller's "express consent and permission." (Doc. 25-2.) Fuller noted in the letter

---

[2] Missoula Schools also suggests Lagervall has not demonstrated he is a "qualified individual with a disability." But it concedes it possesses no information which it could present to the Court to affirmatively establish he is not a "qualified individual with a disability." Thus, Missoula Schools does not argue Lagervall's ADA claim fails on the first element of an ADA claim.

8

that the restrictions were due to both Lagervall's prior failure to comply with school policy, and his aggressive and disruptive actions while previously on the premises at Sentinel.[3]

Fuller affirmatively states that after his November 4, 2015 letter to Lagervall, Lagervall sought and obtained Fuller's consent and permission to go to Sentinel's campus on several occasions. Fuller states he is not aware of any occasion where Lagervall was denied access to Sentinel's campus. And specifically, Fuller asserts that, contrary to Lagervall's allegations, there was no "educational career fair" that took place at Sentinel on November 5, 2015, which he prevented Lagervall from attending. (Doc. 25-1 at 4.)

Because Lagervall did not respond to Missoula Schools' summary judgment motion, he has not identified or presented any evidentiary materials suggesting Missoula Schools excluded him from participating in, or obtaining the schools' programs and activities. The Court also finds no evidence in the record suggesting he was excluded from Sentinel's services.

In addition to arguing it did not exclude Lagervall from the benefit of

---

[3]Missoula Schools' policy provides that an individual, while on "school property", may not "[i]mpede, delay, or otherwise interfere with the orderly conduct of the District's educational program or any other activity occurring on school property[,]" or "[w]illfully violate other District rules and regulations." (Doc. 25-3.)

Sentinel's services, Missoula Schools further argues its conduct in requiring Lagervall to first obtain consent and permission to go to Sentinel's campus was not because of any disability Lagervall may have. The record reflects Lagervall had a history of going to Sentinel's campus and being disruptive, aggressive, and intimidating to employees by being angry, raising his voice, yelling at Sentinel employees, and causing employees to be concerned for their safety and well being. Thus, the record reflects the restrictions imposed upon Lagervall were by reason of his past angry, aggressive, disruptive, and non-compliant conduct, not by reason of any disability. Defendants' motion should be granted in this respect.

### C. **No Retaliation, Coercion, or Intimidation Under the ADA**

The ADA prohibits retaliatory conduct as follows:

> No person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter.

42 U.S.C. § 12203(a). *See also* 28 C.F.R. § 35.134(a). An ADA retaliation claim does not necessarily depend on the plaintiff's proof of a disability, but instead requires the plaintiff to establish "(a) that he or she was engaged in protected activity, (b) that he or she suffered an adverse action, and (c) that there was a causal link between the two." *T.B. ex rel. Brenneise v. San Diego Unified School*

*District*, 806 F.3d 451, 473 (9th Cir. 2015) (citations and quotations omitted). *See also Alvarado v. Cajun Operating Co.*, 588 F.3d 1261, 1269 (9th Cir. 2009) (quoting *Coons v. Sec'y of U.S. Dept. of Treasury*, 383 F.3d 879, 887 (9th Cir. 2004)). The claim requires the plaintiff to prove that but for his or her engagement in protected activity he or she would not have experienced the adverse action. *T.B. ex rel. Brenneise*, 806 F.3d at 473.

The record in this case does not support a finding that Missoula Schools engaged in retaliatory conduct as prohibited under the ADA, and no reasonable jury could conclude retaliation occurred under the facts presented. For purposes of the retaliation analysis, the Court assumes, without deciding, that Lagervall had engaged in an activity protected under the ADA.[4] Additionally, the Court assumes the restrictions Missoula Schools imposed on Lagervall's access to the Sentinel campus was an action that was adverse to him. Nonetheless, Missoula Schools has demonstrated there exists no evidence in the record suggesting that the restrictions it imposed were the result of any protected activity in which Lagervall may have engaged. Instead, the record reflects the restrictions were the result of

---

[4]Defendants do not seek to establish that Lagervall had not been engaged in a protected activity. Arguably, Lagervall may have been asserting his own rights as a disabled person to participate in, or gain access to, the educational process provided to P.L. at Sentinel.

11

Lagervall's history of intimidating, aggressive, disruptive and angry behavior. In view of Lagervall's behavior, the evidence in the record does not suggest that Missoula Schools would not have imposed restrictions on Lagervall's access but for any protected activities in which Lagervall engaged. Therefore, Missoula Schools' motion for summary judgment on the retaliation claim should be granted.

Similarly, the ADA also prohibits coercive or intimidating conduct as follows:

> It shall be unlawful to coerce, intimidate, threaten, or interfere with any individual in the exercise or enjoyment of, or on account of his or her having exercised or enjoyed, or on account of his or her having aided or encouraged any other individual in the exercise or enjoyment of, any right granted or protected by this chapter.

42 U.S.C. § 12203(b). *See also* 28 C.F.R. § 35.134(b). A violation of this prohibition requires the plaintiff to establish that at the time the alleged coercive or intimidating conduct occurred the plaintiff was exercising or enjoying a right protected under the ADA. *Alford v. City of Cannon Beach*, 2000 WL 33200554, *12 (D. Or. 2000).

Although the Court has not located decisional law within the Ninth Circuit expressly discussing whether section 12203(b) requires that a causal link be shown between a plaintiff's protected conduct and a defendant's unlawful conduct, the Court concludes, by analogy with other federal laws, that section

12203(b) requires a causal link. Federal Fair Housing Act laws similarly prohibit a defendant from engaging in coercive or intimidating conduct towards a person who is exercising rights protected under fair housing laws. The specific statute prohibiting the wrongful conduct employs the exact same language as that used under the ADA in 42 U.S.C. § 12203(b) quoted above. *See* 42 U.S.C. § 3617. The language in section 3617 is construed to prohibit a defendant from engaging in coercive or intimidating conduct *because of* the plaintiff's protected activity. *Smith v. Housing Authority of South Bend*, 867 F. Supp. 2d 1004, 1016 (N.D. Indiana 2012). *See Arceneaux v. Marin Housing Authority*, 2015 WL 3396673, *6 (N.D. Cal. 2015) (dismissing section 3617 claim where allegations demonstrated defendant's alleged wrongful conduct occurred *because of* reasons other than the plaintiff's protected activity).

Because section 12203(b) of the ADA employs language identical to the language in section 3617 of the Fair Housing Act, the Court construes section 12203(b) to impose the same requirement of a causal link between a plaintiff's protected activities and the defendant's alleged wrongful coercive or intimidating conduct. Thus, Lagervall must demonstrate that any alleged coercive or intimidating conduct committed by Missoula Schools was *because of* his engagement in activities protected under the ADA.

Lagervall's allegations suggest Missoula Schools sought to coerce and intimidate him by means of the letter Fuller issued to him on November 4, 2015, and by its deployment of Officer Monaco, a law enforcement officer, for the purpose of delivering Fuller's letter and preventing Lagervall from entering the school building on November 4, 2015. But Missoula Schools has presented sufficient evidence in the record demonstrating the absence of a genuine issue of fact as to the reason Fuller issued his letter to Lagervall, and the reason Officer Monaco was directed to interact with Lagervall. The reason those events occurred was because of Lagervall's disruptive, aggressive, and angry behavior towards employees at Sentinel. No reasonable jury could conclude Missoula Schools' actions were taken because of any protected activity in which Lagervall engaged. The summary judgment motion should be granted in this respect.

### D. Effective Communication

Lagervall's allegations suggest Missoula Schools engaged in conduct which prevented effective communication between Sentinel staff and Lagervall in violation of the ADA. Missoula Schools moves for summary judgment dismissing this claim.

Regulations promulgated under the ADA require a "public entity" to take appropriate steps to ensure that its communications with disabled individuals are

effective. 28 C.F.R. § 35.160(a)(1). Lagervall alleges that during his communications with staff at Sentinel:

> the volume of my voice increased (part of my documented disability) this made verbal communication inadequate. I stated that I would bring [Fuller] a copy of the normal accommodations needed to ensure equally effective communication. 28 C.F.R. 35.160.

(Doc. 2-1 at 2.) Significantly, however, Lagervall does not allege that Missoula Schools refused to make accommodations for his disability so as to make communications with him effective. Rather, it appears from his allegations that he contends Fuller's letter imposing restrictions upon his access to the Sentinel campus impeded his opportunities for communications. But, Fuller's affidavit confirms that in response to his letter Lagervall obtained permission for access to Sentinel, and Lagervall was granted such permission several times. Fuller is not aware of any time Lagervall's request for access was denied. Therefore, the record reflects that Lagervall's opportunities for effective communication were preserved and exercised by Lagervall. There exists no evidence in the record suggesting Missoula Schools refused to make accommodations for Lagervall to make communications with him effective. Missoula Schools motion should be granted in this respect.

15

## IV. Conclusion

Based on the foregoing, IT IS RECOMMENDED that Defendants' motion for summary judgment be GRANTED, and this action be DISMISSED.

And in view of this recommended dismissal, IT IS ORDERED that Defendants' motion to compel Lagervall to respond to discovery requests, and Lagervall's motion to extend the deadline for filing his summary judgment motion (doc. 23 at 2) are DENIED.

DATED this 22nd day of August, 2017.

/s/ Jeremiah C. Lynch
Jeremiah C. Lynch
United States Magistrate Judge